Slip Op. 09-118

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                 :
MTZ POLYFILMS, LTD.,           :
                                   :
            Plaintiff,            :
                                   :
     v.                               :
                                   :
UNITED STATES,              :         Before:       WALLACH, Judge
                                   :         Court No:    08-00089
            Defendant,       :
                                   :
           and                   :
                                   :
TORAY PLASTICS (AMERICA), INC.,   :
DUPONT TEIJIN FILMS USA, LP, SKC  :
AMERICA, INC., and MITSUBISHI      :
POLYESTER FILM OF AMERICA, LLC,  :
                                   :
           Defendant-Intervenors.   :
_____  :

[Plaintiff's Motion for Judgment on the Agency Record is DENIED and the Agency's Determination is AFFIRMED.]

Dated:         October 15, 2009

Riggle & Craven (David J. Craven) for Plaintiff MTZ Polyfilms, Ltd.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David D'Alessandris); and Carrie L. Owens, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

Wilmer, Cutler, Pickering, Hale and Dorr, LLP (John D. Greenwald, Ronald I. Meltzer, and Patrick McLain) for Defendant-Intervenors Dupont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc.

# I
# INTRODUCTION

This action arises out of the administrative review of a countervailing duty order conducted by the United States Department of Commerce ("Commerce"). Plaintiff MTZ Polyfilms, Ltd. ("MTZ") challenges Commerce's calculation of the benefits it receives under a number of programs administered by the Government of India. MTZ also challenges Commerce's decision to treat certain programs as countervailable subsidies.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Because Commerce's decisions are supported by substantial evidence and otherwise in accordance with law, Commerce's determination in <u>Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review</u>, 73 Fed. Reg. 7,708 (February 11, 2008), as amended by <u>Amended Final Results of Countervailing Duty Administrative Review: Polyethylene Terephthalate (PET) Film, Sheet, and Strip from India</u>, 73 Fed. Reg. 15,135 (March 21, 2008) (together the "<u>Final Results</u>"), is affirmed.

# II
# BACKGROUND

Commerce imposed a countervailing duty order on polyethylene terephthalate film, sheet, and strip from India in 2002. <u>Notice of Countervailing Duty Order: Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India</u>, 67 Fed. Reg. 44,179 (July 1, 2002) ("<u>CVD Order</u>"). In response to a request by MTZ, Commerce initiated an administrative review of the <u>CVD Order</u> in 2006. <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part</u>, 71 Fed. Reg. 51,573, 51,575 (August 30, 2006).

2

Thereafter, Commerce published the preliminary results of this administrative review. Polyethylene Film, Sheet, and Strip from India: Preliminary Results and Rescission, in Part, of Countervailing Duty Administrative Review, 72 Fed. Reg. 43,607 (August 6, 2007) ("Preliminary Results"). After issuing the Preliminary Results, Commerce conducted verification in India in September 2007. See Verification of the Questionnaire Responses Submitted by the Government of India (December 7, 2007), Public Record ("P.R.") 117, and Verification of the Questionnaire Responses Submitted by MTZ (December 7, 2007), P.R. 118. MTZ and the Defendant-Intervenors submitted briefing materials in December 2007. See, e.g., Case Brief of MTZ Polyfilms, Ltd. (December 20, 2007), P.R. 123, and Rebuttal Brief on Behalf of DuPont Teijin Films, Mitsubishi Polyester Film of America, and Tory Plastics (America), Inc. (December 28, 2007), P.R. 130. Commerce held a hearing on January 10, 2008 and issued the final results of its administrative review on February 11, 2008. Polyethylene Terepthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review, 73 Fed. Reg. 7,708 (February 11, 2008).

After Commerce issued these final results, MTZ submitted a request for Commerce to correct alleged ministerial errors. See Request for Correction of Ministerial Errors (February 11, 2008), P.R. 141. Before Commerce responded, MTZ initiated this action on March 10, 2008. See Summons (March 10, 2008). Thereafter, Commerce published its response to MTZ's allegations of ministerial error; Commerce accepted MTZ's argument with respect to calculation of the benefit MTZ derived from purchases within India's Union Territories. See Amended Final Results of Countervailing Duty Administrative Review: Polyethylene Terephthalate (PET) Film, Sheet, and Strip from India, 73 Fed. Reg. 15,135, 15,135 (March 21, 2008). Commerce rejected MTZ's other arguments. See id. at 15,135-36.

3

# III
# STANDARD OF REVIEW

The court will hold unlawful a determination by Commerce resulting from an administrative review of a countervailing or antidumping duty order if that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); see 19 U.S.C. § 1516a(a)(2)(B)(iii); see also GPX Int'l Tire Corp. v. United States, 2009 Ct. Intl. Trade LEXIS 108, at *8 (September 19, 2009) (applying a single standard of review to both countervailing and antidumping duty final determinations).

A determination is supported by substantial evidence if the record contains "evidence that a reasonable mind might accept as adequate to support a conclusion." Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951)).  While the court must consider contradictory evidence, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Cleo Inc., 501 F.3d at 1296 (citing Universal Camera Corp., 340 U.S. at 487-88); see also Am. Silicon Techs. v. United States, 261 F.3d 1371, 1375-76 (Fed. Cir. 2001); U.S. Steel Group v. United States, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996).

To determine whether Commerce's interpretation and application of the countervailing and antidumping duty statute at issue is otherwise "in accordance with law," the court must conduct the two-step analysis articulated by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  Under the first step of the Chevron analysis, the court must ascertain "'whether

4

Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (quoting Chevron, 467 U.S. at 842-43).

The court reaches the second step of the Chevron analysis only "'if the statute is silent or ambiguous with respect to the specific issue.'" Wheatland Tube Co., 495 F.3d at 1359 (quoting Chevron, 467 U.S. at 843).  Under this second step, the court must evaluate whether Commerce's interpretation "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. The agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. See Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978) (citations omitted).  The court must defer to Commerce's reasonable interpretation of a statute even if it might have adopted another interpretation if the question had first arisen in a judicial proceeding. Id. (citations omitted).

## IV
## DISCUSSION

MTZ challenges several decisions made by Commerce during the course of the administrative review.  MTZ challenges Commerce's calculation of the benefits received by MTZ under both the Duty Entitlement Passbook Scheme and the Export Promotion Capital Goods Scheme.  MTZ also challenges Commerce's decisions to treat as countervailable subsidies both the Advance License Program and the Union Territory Central Sales Tax exemption.

MTZ's challenges are "bare assertions" that lack "citation to any applicable statutory or regulatory provisions."[1] Fujian Lianfu Forestry Co., Ltd. v. United States, Slip Op. 09-81, 2009 Ct. Int'l Trade LEXIS 92, at *53 (August 10, 2009). These bare assertions represent only MTZ's philosophical views as to how the legal framework within which Commerce makes determinations in respect of subsidy programs should operate; they represent neither the standards governing how Commerce should decide whether to treat certain government programs as countervailable subsidies nor the standards governing how Commerce should calculate the benefits conferred under these programs. As the court noted in Fujian, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" Fujian, 2009 Ct. Int'l Trade LEXIS at *53 (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

Useful to this analysis is Carducci v. Regan, 714 F.2d 171 (D.C. Cir. 1982), in which then-Judge Scalia noted that "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." Carducci, 714 F.2d at 177. Carducci adds that "[f]ailure to enforce the requirement" in Federal Rule of Appellate Procedure 28(a)(4) that briefs submitted by the parties contain citation to the authorities and parts of the record relied on "will ultimately deprive [the court] in substantial measure of that assistance of counsel which the system assumes." Id. These principles apply to actions brought in this court under 28

---

[1] Given Plaintiff's failures to cite legal authority for any of its propositions and to cite relevant record evidence, the court did not follow its routine practice of holding oral argument before deciding this motion.

6

U.S.C. § 1581(c), where the court's mandate is to sustain Commerce's determinations unless

they are "'unsupported by substantial evidence on the record, or otherwise not in accordance

with law.'" <u>Carpenter Tech. Corp. v. United States</u>, 510 F.3d 1370, 1373 (Fed. Cir. 2007)

(quoting 19 U.S.C. § 1516a(b)(1)(B)(i)) (as discussed in Section III above).

      Like the Federal Rule of Appellate Procedure referred to in <u>Carducci</u>, USCIT Rule

56.2(c)(2) provides that briefs supporting motions for judgment on the agency record filed in

actions arising under 28 U.S.C. § 1581(c) "<u>must</u> include the authorities relied on and the

conclusions of law deemed warranted by the authorities" USCIT Rule 56.2(c)(2) (emphasis

added).  Because MTZ has made "no effort at identifying the [applicable] standards" and, thus,

failed to provide the court with a basis "against which [it can] review the reasonableness" of

Commerce's determinations, the court need not entertain MTZ's challenges. <u>Fujian</u> at *54

(endorsing the rationale articulated in <u>Zannino</u>, 895 F.2d at 17).  Thus, the court simply does not

need to go beyond this point in its analysis.  Nevertheless, the court has reviewed the

determinations challenged by MTZ against the applicable legal framework and concluded that

they should be sustained.

**A**
**Commerce Properly Calculated The Benefit Conferred Upon MTZ By The Duty**
**Entitlement Passbook Scheme**

      Under the Duty Entitlement Passbook Scheme ("DEPS"), which the Government of India

enacted in 1997, exporters can earn import duty exemptions in the form of "passbook credits"

rather than cash. Issues and Decision Memorandum in the Final Results of the Countervailing

Duty Administrative Review of Polyethylene Terephthalate Film, Sheet, and Strip from India

(February 4, 2008) ("Final Decision Memo"), P.R. 139, at 12.  These credits are issued as a

license following the exportation of each eligible shipment and are valid for twelve months. <u>Id.</u>

at 12-13. They can be applied against duties on any subsequent imports, including those imports that are not utilized in the production of an exported product, and they are transferable after the foreign exchange is realized from the export sales upon which they were earned. Id.

Commerce "has previously determined that the [DEPS] is countervailable" and considers the DEPS benefit to be the full "amount of the duty exemptions." Id.; see also Remission or Drawback of Import Charges Upon Export, 19 C.F.R. § 351.519(a)(4). A DEPS benefit is "conferred as of the date" that the associated shipment is exported rather than the subsequent date that the associated DEPS license is issued. Final Decision Memo at 13 (citing 19 C.F.R. § 351.519(b)(2)). Accordingly, Commerce's calculation of the DEPS benefit should in principle exclude shipments exported prior to the period of review even if the licenses associated with those shipments are issued within the period of review. See Memorandum from Elfi Blum, International Trade Compliance Analyst, to Barbara E. Tillman, Director, Office 6, Re: Analysis of Ministerial Error Allegations in Final Results of countervailing [sic] Duty Review on Polyethylene Terephthalate Film, Sheet, and Strip from India (March 12, 2008), P.R. 146 ("Ministerial Error Memo"), at 2-3.

MTZ alleges that Commerce's calculation erroneously included shipments that were exported prior to the period of review. Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("Plaintiff's Motion") at 10-13. MTZ does not specifically identify such shipments. See id. However, MTZ does identify a discrepancy between data in the administrative record and the result of Commerce's calculation, which discrepancy it attributes to the inclusion of such shipments.

To calculate MTZ's DEPS benefit, Commerce began with "the value of all post-export credits that . . . MTZ earned for all export shipments," subtracted application fees paid by MTZ,

and "divided the resulting amount[] by . . . MTZ's total exports . . . during the [period of review]." Final Decision Memo at 13.  The result of this calculation was a DEPS benefit of 12.78% ad valorem. Id.  However, as MTZ notes, the actual DEPS benefit to MTZ never exceeded 11% ad valorem on any single shipment during the period of review. Plaintiff's Motion at 12; see Response to the Countervailing Duty Supplemental Questionnaire by MTZ Polyfilms, Ltd. (April 18, 2007), Exhibit S-10, Confidential Record ("C.R.") 6.  In other words, the mean value calculated by Commerce (12.78%) is greater than the maximum value present in the data (11%).

Defendant does not address the substance of this discrepancy. See Defendant's Response to Plaintiff's Rule 56.2 Motion for Judgment Upon the Administrative Record ("Defendant's Response") at 11-14; see also Ministerial Error Memo at 2-3.  Defendant instead argues that "the fault lies with MTZ" for repeatedly failing to provide shipment dates for exports associated with some of the DEPS licenses that MTZ had originally reported to Commerce. Id. at 12-13.  MTZ's initial submission included some licenses for which associated shipment dates were omitted. Ministerial Error Memo at 3.  MTZ's second supplemental submission omitted some previously reported licenses. Id.  MTZ's provision of additional information at verification did not fully remedy the initial omission of associated shipment dates. Id.  "Based on the conclusion that MTZ reported its [DEPS] licenses and credits earned as . . . instructed, [Commerce] considered that the credits were earned based on shipments made during the [period of review]." Id.

MTZ responds that Commerce made inconsistent requests for partially irrelevant data, eschewed complete data submitted by MTZ, and instead "cobbled together two other submissions which necessarily included out of period exports." Plaintiff MTZ Polyfilms, Ltd.'s Reply to Responses Submitted by the Defendant and Defendant-Intervenors to Plaintiff's Motion

9

for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("Plaintiff's Reply") at 6-7. However, MTZ fails to support these arguments with sufficient citation to the administrative record.  Accordingly, MTZ has not met its burden of demonstrating that Commerce's factual determinations were "unsupported by substantial evidence on the record." 19 U.S.C. § 1516a(b)(1)(B)(i).

It is unclear whether MTZ also contends that Commerce's determinations were "otherwise not in accordance with law." Id.  Commerce "will consider the entire amount of an [import duty exemption] to confer a benefit" unless the exemption program meets certain requirements. 19 C.F.R. § 351.519(a)(4).  As discussed above, MTZ argues that Commerce in effect considers the entire amount of the DEPS duty exemption—and then some—to confer a benefit.  But only Defendant cites and discusses 19 C.F.R. § 351.519(a)(4). See Defendant's Response at 19-20; Plaintiff's Motion at 10-13; Plaintiff's Reply at 3-8.  Accordingly, MTZ has also not met its burden of demonstrating that Commerce's determinations were "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**B**
**Commerce Properly Calculated The Benefit Conferred By The Export Promotion Capital Goods Scheme**

The Export Promotion Capital Goods Scheme ("EPCGS") permits exporters to pay lower duties on imported capital equipment contingent upon their exportation of "four to five times the value of the capital goods within a period of eight years." Final Decision Memo at 9.  If this export requirement is met, the Government of India formally waives the duties that would otherwise have been owed. Id.  If it is not, then the exporter is required to pay "all or part of the duty reduction, depending on the extent of the export shortfall, plus penalty interest." Id.

10

Commerce treats the subsidy as two distinct benefits: an interest-free loan in the amount of the unpaid duties and a grant when the duties are officially waived. Id.

MTZ challenges four aspects of Commerce's calculation of the benefits it received under the EPCGS. First, MTZ argues that Commerce should not have treated its unpaid import duties as a contingent liability loan. Second, MTZ argues that Commerce should have adjusted the EPCGS benefit to reflect what it characterizes as its "partial fulfillment" or "refixing" of its export obligation. Third, MTZ argues that the interest rate used in the EPCGS calculation is excessive. Fourth, MTZ argues that Commerce did not properly attribute all of the EPCGS benefit to MTZ's sales. According to MTZ, "[t]hese errors . . . are contrary to the facts of record and cannot stand." Plaintiff's Motion at 13. Some of these arguments, however, are more properly characterized as legal, rather than factual, challenges. As Defendant properly points out, "MTZ does not cite a single statute, regulation, or decision of this or any other court in the 16 pages it devotes to this program." Defendant's Response at 14 (emphasis added).

**1**
**Commerce's Decision To Treat MTZ's Unpaid Import Duties As A Contingent Liability Loan Is In Accordance With Law**

MTZ asserts that because "the duty savings [realized under the EPCGS] are not carried in the books and records of MTZ as a long term loan, but rather are treated as earned, it is inappropriate for [Commerce] to treat them as a long term loan." Plaintiff's Motion at 14-15. MTZ proposes that Commerce should, instead, calculate the benefit to reflect the manner in which MTZ depreciates the assets it purchased with the benefit conferred by the EPCGS. Id. at 14. MTZ's proposed methodology is not "relevant to" and "does not comport with" how the EPCGS benefits are treated pursuant to Commerce's regulations. Final Decision Memo at 26.

11

The deferral of indirect taxes provides a benefit that is "treated as a government-provided loan in the amount of the tax deferred, according to the methodology described in [19 C.F.R. § 351.505]." Indirect Taxes and Import Charges (Other than Export Programs), 19 C.F.R. § 351.510(a)(2). When "the repayment obligation is contingent upon the company taking some future action or achieving some goal in fulfillment of the loan's requirements," Commerce is normally required to treat the import duty deferrals as contingent liability loans until the liability is met or until the event upon which repayment depends is no longer a viable contingency. Loans, 19 C.F.R. § 351.505(d).

According to Commerce, one of the benefits "provided under the ECPGS is the amount of unpaid import duties that would have to be paid to the [Government of India] if the accompanying export obligations are not met." Final Decision Memo at 9. Consistent with 19 C.F.R. § 351.505(d), Commerce treated these unpaid import duties as an interest-free contingent liability loan and indicated that it will continue to do so until the export obligation is fulfilled and the contingent obligation no longer exists. See id. at 26.

Thus, Commerce's treatment of MTZ's unpaid import duties is in accordance with law.

**2**
**Commerce's Determination That The Export Obligation Was Not Fulfilled Until Final Action Was Taken By The Government of India Was Supported By Substantial Evidence**

When an export obligation is satisfied and the foreign government officially waives the unpaid import duties, Commerce considers the contingent liability extinguished and, accordingly, treats the waiver of the unpaid duties as a grant. See 19 C.F.R. § 351.505(d)(2); Final Decision Memo at 26. MTZ contends that Commerce should partially convert the contingent liability from an interest-free loan to a grant to reflect what it characterizes as its "partial fulfillment" or "re-fixing" of its export obligation. Plaintiff's Motion at 15-23. In

12

support of this proposition, MTZ cites to the following statement made by Commerce during the course of the initial investigation:

> If we examine this program again in a subsequent proceeding, and respondent companies submit such official documentation certifying that they have met <u>partial</u> export obligations under the EPCGS, we will examine at that point whether such documentation is certification that a company has legally discharged part of its export obligations under the EPCGS, and whether [Commerce] should treat the corresponding part of a company's unpaid Customs duties under the EPCGS as a grant pursuant to 19 C.F.R. § 351.505(d)(2).

Plaintiff's Motion at 15 (quoting Issues and Decision Memorandum accompanying <u>Notice of Final Affirmative Countervailing Duty Determination: Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India</u>, 67 Fed. Reg. 34,905 (May 16, 2002) ("Initial Investigation Decision Memo") at cmt. 5) (emphasis added in Plaintiff's Motion).

MTZ does not appear to challenge Commerce's statement that it requires "official documentation" from the Government of India before it will convert a portion of an interest-free loan to a grant in accordance with 19 C.F.R. § 351.505(d)(2). Rather, MTZ asks the court to reweigh the record evidence and find that it did supply Commerce with the official documentation required. According to MTZ, during the course of the administrative review, MTZ provided letters to Commerce in an attempt to establish that it had partially satisfied the export obligation and that the export obligation had been refixed. <u>See</u> Response of MTZ to Countervailing Duty Fourth Supplemental Questionnaire, Ex. SSSS-4(c), C.R. 18.

Commerce examined the record evidence. <u>See</u> Final Decision Memo at 28 (citing MTZ's First Supplemental Response at Exhibit S-12 (April 18, 2007), and MTZ's Fourth Supplemental Response at Exhibit SSSS-4(c) (August 23, 2007)). Commerce's review of the referenced documents revealed that the Government of India "can revise the terms of the original export obligation at any time." <u>Id.</u> Commerce took the position that because it "cannot reliably measure

13

the true value of the export obligation at a point in time," it would continue to rely "on only those official certifications that extinguish the export obligation, in full." Final Decision Memo at 29. According to Commerce, because the documents submitted by MTZ did not specify that the import duties were officially waived, Commerce would "continue to calculate the benefit as contingent liability loans at the full value of the original duties owed against that license." Id.

This determination was supported by substantial evidence.

**3**
**Commerce Properly Selected The Interest Rate Used To Calculate The Benefit Conferred By The ECPGS**

Commerce's treatment of MTZ's unpaid duties is consistent with the applicable statute and regulations. The applicable statute, 19 U.S.C. § 1677(5)(E), provides that a benefit exists "in the case of a loan[] if there is a difference between the amount the recipient pays on the loan and the amount the recipient would pay on a comparable commercial loan that the recipient could actually obtain on the market." 19 U.S.C. § 1677(5)(E); see also 19 C.F.R. § 351.505(a). The regulation, 19 C.F.R. § 351.505(d), defines a contingent liability interest-free loan as an interest-free loan for which "the repayment obligation is contingent upon the company taking some future action or achieving some goal in fulfillment of the loan's requirements." 19 C.F.R. § 351.505(d). In addition, the regulation provides that a long-term benchmark is to be used to measure the benefit when "the event upon which repayment of the loan depends will occur at a point in time more than one year after the receipt of the contingent liability loan." Id.

Commerce calculates the benefit by using an interest rate from a comparable long-term loan that was "established during, or immediately before, the year" when the contingent liability arose. 19 C.F.R. § 351.505(a)(2)(iii). Where there is no comparable long-term loan, Commerce

14

is authorized to rely upon national average interest rates to calculate the benefit. 19 C.F.R. § 351.505(a)(3)(ii).

Here, Commerce used a long-term interest rate benchmark because the ECPGS export window closes eight years after importation of the capital good. Final Decision Memo at 11-12. Because MTZ did not have a comparable long-term rupee-denominated loan from a commercial bank that was established during, or immediately before, the year under consideration, Commerce relied upon national average interest rates as reflected in statistics generated by the International Monetary Fund. Preliminary Results, 72 Fed. Reg. at 43,609. Commerce's calculations are thus consistent with the applicable statute and regulations.

MTZ asserts that Commerce should modify its methodology to reflect MTZ's accounting practices with respect to the goods that MTZ purchased through the EPCGS. Plaintiff's Motion at 14-15. MTZ additionally asserts that Commerce must utilize a "commercial reality" test. Plaintiff's Motion at 25. Under this proposed test, Commerce must, first, "assume that any rational company would 'pay off' the loan at no less than the rate of depreciation of the underlying asset" and, second, adjust the rate to reflect market fluctuations. Id. at 25-26.

Commerce's methodology, however, is presumptively correct. Thai Pineapple v. United States, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (citations omitted). Indeed, Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." United States v. Eurodif S.A., 129 S. Ct. 878, 886 (2009) (citing Chevron, 467 U.S. at 844). To prevail on its arguments, MTZ would have to demonstrate that Commerce's methodology is not a reasonable interpretation of the statute. See Chevron, 467 U.S. at 844. It has not.

15

**4**

<u>Commerce Properly Attributed All Of The ECPGS Benefit To MTZ's Export Sales</u>

Commerce attributed all of the benefit from the ECPGS program to MTZ's total exports because it determined that the program is not tied to subject merchandise. Final Decision Memo at 10.  MTZ first contests Commerce's decision to attribute the benefit only to its export sales. Plaintiff's Motion at 26-27.  According to MTZ, the machinery can also be used to produce goods that it sells in its domestic market. <u>Id.</u>  MTZ also contests Commerce's decision to attribute to its exports of subject merchandise (PET film) the ECPGS benefit received for purchase of the machinery used to manufacture PET chips. <u>Id.</u> at 27-29.  MTZ provides no legal authority to support its contentions. <u>See</u> <u>id.</u> at 26-29.

MTZ's first contention—that Commerce incorrectly attributed the ECPGS benefit only to its export sales—does not reflect the applicable legal framework.  Commerce's first step in determining how to attribute the benefit of a subsidy is to determine the type of subsidy bestowed.  If a subsidy is "contingent upon export performance," it is properly treated as an export subsidy. 19 U.S.C. § 1677(5A)(B); <u>Export Subsidies</u>, 19 C.F.R. § 351.514(a). Commerce's next step is to divide the benefits received from the subsidy by the relevant sales. Commerce will "attribute an export subsidy only to products exported by that firm." <u>Calculation of Ad Valorem Subsidy Rate and Attribution of Subsidy to a Product</u>, 19 C.F.R. § 351.525(b).

Here, Commerce found that the EPCGS "is contingent upon export" and, accordingly, determined that it was an export subsidy. <u>Preliminary Results</u>, 72 Fed. Reg. at 43,612.  After making this determination, Commerce then attributed the benefit only to MTZ's export sales. <u>Id.</u> at 43,613.  MTZ's argument that Commerce should have considered its domestic sales is contrary to the statute and the corresponding regulations.  As Defendant notes, "MTZ's use of its

machinery to produce goods for domestic sale does not negate the fact that the [Government of India's] waiver of these duties is contingent upon MTZ's export of a certain amount of goods." Defendant's Response at 24.

Similarly, MTZ's second contention—that Commerce should not have attributed to its exports of subject merchandise (PET film) the ECPGS benefit received for purchase of the machinery used to manufacture PET chips—fails to reflect the applicable legal framework. The relevant regulation, 19 C.F.R. § 351.525(b)(5)(i), provides that if a "subsidy is tied to the production or sale of a particular product" Commerce will "attribute the subsidy only to that product." 19 C.F.R. § 351.525(b)(5)(i). Commerce looks only to "the stated purpose of the subsidy . . . at the time of bestowal." Countervailing Duties: Final Rule, 63 Fed. Reg. 65,348, 65,403; Royal Thai Government v. United States, 441 F. Supp. 2d 1350, 1363-64 (CIT 2006). As long as the subject merchandise could be produced, it is immaterial whether and how such subject merchandise is actually produced. See Fabrique de Fer de Charleroi v. United States, 166 F. Supp. 2d 593, 601-04 (CIT 2001).

Commerce states that it countervailed the benefit received from importing "two separate types of capital equipment that can be used to produce both PET chips and PET film," because such equipment could be used to produce subject merchandise or an input for subject merchandise. Final Decision Memo at 32. This is consistent with the legal framework within which Commerce must make its determination, as described in the preceding paragraph.

Accordingly, Commerce's calculation of the ECPGS benefit is supported by substantial evidence and in accordance with law.

**C**
**Commerce Properly Found That The Advance License Program**
**Is A Countervailable Subsidy**

MTZ argues that Commerce's determination that certain exempted import charges that were waived under the Advance License Program ("ALP") were countervailable is "not grounded in fact." Plaintiff's Motion at 30. MTZ does not cite any legal authority in support of its argument but, rather, asks the court to reweigh the record evidence. See id. at 29-30.

In accordance with 19 CFR § 351.519(a)(4)(i), Commerce examined whether the Government of India had a reasonable "system or procedure to confirm which inputs are consumed in the production of the exported products and in what amounts" that is "effective for the purposes intended[] and is based on generally accepted commercial practices in the country of export." 19 CFR § 351.519(a)(4)(i). Commerce found that the Government of India did not have such a system in place. Final Decision Memo at 7-8, 22. After reviewing the record evidence, Commerce determined that the Government of India was not able to provide calculations that took into account the production of the PET film industry. Id. at 22. Commerce also determined that there was a lack of evidence regarding the Government of India's assessment of penalties on companies that either did not meet the export requirements established by the ALP or that claimed excessive credits. Id. Moreover, Commerce found that "no allowance was made by the [Government of India] to account for waste to ensure that the amount of duty deferred would not exceed the amount of import charges on imported inputs…." Id.

MTZ essentially argues that Commerce should accord deference to the Government of India's view that its procedures are adequate based on "principles of comity." Plaintiff's Motion at 30. MTZ fails to cite legal authority for this position. More importantly, MTZ's position

18

would render 19 C.F.R. § 351.519(a)(4) irrelevant; if Commerce were under some sort of duty to accept a foreign government's view regarding the adequacy of that government's procedure, there would never be a need for Commerce to make an independent assessment, as it is required to do by the regulation.

Commerce also examined, in accordance with 19 C.F.R. § 351.519(1)(4)(ii), whether the Government of India "has carried out an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts." 19 C.F.R. § 351.519(1)(4)(ii).  Commerce found that the Government of India did not actually perform such an examination because it did not review all SIONs that were used in the PET film industry. Final Decision Memo at 23.

MTZ has not met its burden of demonstrating that Commerce's findings are not supported by substantial evidence.

## D
## Commerce Properly Determined That The Government of India's Decision To Not Impose The Central Sales Tax In Union Territories Is Geographically Specific

MTZ contests Commerce's determination that the Government of India's exemption of firms in the Union Territories[2] from collecting the Central Sales Tax ("CST") was geographically specific and provided a benefit to MTZ in an amount equal to the tax that MTZ would otherwise have owed.  Plaintiff's Motion at 31.  MTZ alternatively contends that it did not receive a benefit because its suppliers raised its prices. Id. at 32.  MTZ does not cite any legal authority in support of these contentions. See id. at 31-32.

---

[2]  "The Republic of India is composed of … 28 States and seven centrally administered Union Territories." The Statesman's Yearbook 2010: The Politics, Cultures and Economies of the World 614 (Barry Turner ed., 2009); see also Government of India Verification Report, P.R. 117, at 10.

19

The Central Sales Tax "is levied on intra-state sales and is controlled and regulated by the [Government of India]." Government of India Verification Report, P.R. 117, at 10. The Government of India exempted companies within Union Territories from collecting the CST. Final Decision Memo at 34-35. Commerce found that this exemption was "limited to an enterprise or industry located within a designated geographical region within the jurisdiction of the authority providing the subsidy." 19 U.S.C. § 1677(5A)(D)(iv); see Final Decision Memo at 35. It is irrelevant that MTZ's suppliers allegedly raised prices, as the statute directs Commerce to evaluate the "benefit to the recipient." 19 U.S.C. § 1677(5)(E). In the case of an exemption from an indirect tax such as the CST, "a benefit exists to the extent that the taxes . . . paid by a firm as a result of the [exemption] are less than the taxes the firm would have paid in the absence of the [exemption]." 19 C.F.R. § 351.510. Commerce accordingly determined that "[t]he benefit equals the amount of sales taxes not paid by MTZ pursuant to [19 U.S.C. § 1677(5)(E)]." Final Decision Memo at 35.

Thus, Commerce's findings with respect to the CST are supported by substantial evidence.

# V
## CONCLUSION

For the above stated reasons, Plaintiff's Motion for Judgment on the Agency Record is DENIED and Commerce's determination in Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review, 73 Fed. Reg. 7,708 (February 11, 2008), as amended by Amended Final Results of Countervailing Duty

Administrative Review: Polyethylene Terephthalate (PET) Film, Sheet, and Strip from India, 73

Fed. Reg. 15,135 (March 21, 2008), is AFFIRMED.


                                          __/s/ Evan J. Wallach____
                                          Evan J. Wallach, Judge

Dated: October 15, 2009
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

MTZ POLYFILMS, LTD.                      :
                                         :
            Plaintiff,                   :
                                         :
       v.                                :
                                         :
UNITED STATES                            :            Before:     WALLACH, Judge
                                         :            Court No:    08-00089
            Defendant,                   :
                                         :
       and                               :
                                         :
TORAY PLASTICS (AMERICA), INC.,          :
DUPONT TEIJIN FILMS USA, LP, SKC         :
AMERICA, INC., and MITSUBISHI            :
POLYESTER FILM OF AMERICA, LLC           :
                                         :
            Defendant-Intervenors.       :
_____         :

ORDER AND JUDGMENT

This case having come before the court upon the Motion for Judgment on the Agency Record filed by Plaintiff MTZ Polyfilms, Ltd. ("Plaintiff's Motion"); the court having reviewed all pleadings and papers on file herein and, after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion is DENIED; and it is further

ORDERED, ADJUDGED AND DECREED that the decision of the United States Department of Commerce in Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review, 73 Fed. Reg. 7,708 (February 11, 2008), as amended by Amended Final Results of Countervailing Duty Administrative Review: Polyethylene Terephthalate (PET) Film, Sheet, and Strip from India, 73 Fed. Reg. 15,135 (March 21, 2008) is hereby AFFIRMED.


                                    __/s/ Evan J. Wallach____
                                    Evan J. Wallach, Judge

Dated: October 15, 2009
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____         By: _____
                                                                     Deputy Clerk